IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY, INC. | § | |
| | § | |
| Plaintiff-counterdefendant, | § | |
| | § | Civil Action No. 3:12-CV-0029-D |
| VS. | § | |
| | § | |
| AMY DUNLAP, | § | |
| | § | |
| Defendant-counterplaintiff. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiff-counterdefendant moves under Fed. R. Civ. P.

12(b)(6) to dismiss defendant-counterplaintiff's counterclaims under the Texas Deceptive

Trade Practices-Consumer Protection Act ("DTPA") and the Sherman Act for failure to state

a claim on which relief can be granted, and moves under Rule 12(f) to strike defendant-

counterplaintiff's general denial and three of her affirmative defenses.  The court grants the

motions in part and denies them in part, and grants defendant-counterplaintiff leave to

replead.

I

Plaintiff-counterdefendant Mary Kay, Inc. ("Mary Kay") filed suit in state court

against defendant-counterplaintiff Amy Dunlap ("Dunlap") seeking to recover for breach of

contract.[1]  Dunlap removed the case to this court and asserted counterclaims under the

---

[1]In deciding Mary Kay's Rule 12(b)(6) motion, the court construes Dunlap's pleading
in the light most favorable to her, accepts as true all well-pleaded factual allegations, and
draws all reasonable inferences in her favor.  *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d

DTPA, the Sherman Act, and in the alternative, contract reformation.  Mary Kay moves

under Rule 12(b)(6) to dismiss Dunlap's DTPA and Sherman Act claims for failure to state

a claim on which relief can be granted, and moves to strike Dunlap's general denial and

several of Dunlap's affirmative defenses.

Mary Kay is a manufacturer and distributor of cosmetics and other related products.

It sells its products at wholesale prices to Independent Beauty Consultants ("IBCs") who sell

the products to their customers.  Certain IBCs are offered the opportunity to become

National Sales Directors ("NSDs").  Mary Kay provides NSDs with special benefits and

opportunities that it does not provide IBCs.

In 2005 Dunlap became an NSD by entering into an Independent National Sales

Director Agreement (the "Agreement") with Mary Kay.  Dunlap alleges that she performed

her obligations under the Agreement and became one of Mary Kay's largest distributors;

that, throughout her tenure as a distributor, Mary Kay continually represented to her that she

owned her own business; and that, on terminating the Agreement, Mary Kay failed to pay

her the value of her business, and in doing so, violated the DTPA and federal antitrust laws.

---

433, 437 (5th Cir. 2004). In the context presented here, the court applies a similar standard
to Mary Kay's Rule 12(f) motion to strike. *See* 5C Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1380, at 403-04 (3d ed. 2004) ("All well-pleaded facts are
taken as admitted on a motion to strike but conclusions of law or conclusions drawn from the
facts do not have to be treated in that fashion by the district judge.") (footnotes omitted).

II

In deciding Mary Kay's motion, the court evaluates the sufficiency of Dunlap's counterclaims by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to [Dunlap].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive Mary Kay's motion to dismiss, Dunlap must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court turns first to Dunlap's counterclaims under the DTPA.

A

The DTPA provides, in pertinent part:

> A *consumer* may maintain an action where any of the following
> constitute a producing cause of economic damages or damages
> for mental anguish:
>> (1) the use or employment by any person of a false,
>> misleading, or deceptive act or practice that is:
>>> (A) specifically enumerated in a subdivision of
>> Subsection (b) of Section 17.46 of this subchapter; and
>>> (B) relied on by a consumer to the consumer's
>> detriment;
>> (2) breach of an express or implied warranty; [or]
>> (3) any unconscionable action or course of action
>> by any person[.]

Tex. Bus. & Com. Code Ann. § 17.50(a) (West 2011) (emphasis added).  Under the DTPA,

a consumer is a person "who seeks or acquires by purchase or lease, any goods or services."

*Id.* at § 17.45(4).[2]  "To be [a] consumer[] under the DTPA . . . the goods or services must

form the basis of [her] complaint." *Lonergan v. A.J.'s Wrecker Serv. of Dall., Inc.*, 1999 WL

462333, at *3 (N.D. Tex. July 6, 1999) (Fitzwater, J.) (citing *Melody Home Mfg. Co. v.

Barnes*, 741 S.W.2d 349, 351-52 (Tex. 1987)).  "The question of whether a plaintiff is a

---

[2]A "business consumer" is "an individual, partnership, or corporation who seeks or
acquires by purchase or lease, any goods or services for commercial or business use." Tex.
Bus. & Com. Code Ann. § 17.45(10) (West 2011).  Because Dunlap alleges that she is a
consumer and/or a business consumer under the DTPA, the court notes that the difference
between the two is immaterial to the court's decision.  The court will therefore address only
whether Dunlap is a consumer.

consumer under the DTPA is a question of law for the trial court." *Fisher Controls Int'l, Inc. v. Gibbons*, 911 S.W.2d 135, 139 (Tex. App. 1995, writ denied). "If the purchasers are not consumers, then they have no standing under the act. Only consumers may recover under Tex. Bus. & Com. Code Ann. § 17.50(a)." *Chastain v. Koonce*, 700 S.W.2d 579, 581 (Tex. 1985). "The DTPA does not apply to wholly intangible property rights." *Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 125 (5th Cir. 1993) (citing *Texas Cookie Co. v. Hendricks & Peralta, Inc.*, 747 S.W.2d 873, 876 (Tex. App. 1988, writ denied)). Both the acquisition of a business entity, *see Texas Cookie*, 747 S.W.2d at 877, and the right to act as a company's sales representative, *see Fisher Controls*, 911 S.W.2d at 139, are intangible property rights that the DTPA does not cover. "[W]hen a transaction's central objective is the acquisition of an intangible, Texas law requires . . . that a collateral service was an objective of the transaction and not merely incidental to the performance of a transaction excluded under the DTPA." *FDIC v. Munn*, 804 F.2d 860, 865 (5th Cir. 1986). For example, Texas courts have held that the DTPA applies "to franchise situations where the collateral services provided to a franchisee formed the basis of the DTPA claim." *Meineke Disc. Muffler*, 999 F.2d at 125 (citing *Texas Cookie*, 747 S.W.2d at 877); *see also Harris v. Chang*, 2002 WL 24581, at *5 (Tex. App. 2002, pet. denied) (not designated for publication).

B

Mary Kay maintains for four distinct reasons that Dunlap is not a consumer under the DTPA: (1) she did not acquire "goods or services;" (2) any goods or services acquired were not acquired by "purchase or lease;" (3) any goods or services acquired were not an

important objective of the transaction; and (4) any goods or services acquired do not form the basis of her complaint.  Dunlap responds that she is a DTPA consumer because the Agreement  involves the acquisition of both goods and services that were central to the success of her "business" as an NSD under the Agreement, and that these goods and services form the basis of her claim that Mary Kay misrepresented that she would own her own business.

1

The court considers first whether any goods or services that Dunlap acquired as part of the Agreement were an important objective of the transaction.  Dunlap cites several paragraphs of the Agreement to demonstrate that she acquired goods or services under it.  For example, the Agreement provides that Dunlap, as an NSD, will continue her business of selling products purchased from Mary Kay and reselling them to the ultimate consumers; Dunlap has the right to receive a 50% discount on certain Mary Kay products; Dunlap has the right to purchase or receive promotional items and materials; Dunlap can receive special recognition, financial compensation, and specialized education from Mary Kay; Dunlap can access Mary Kay's customer reports and information; and Dunlap can use certain copyrighted materials.

Mary Kay also argues that even if it is assumed that the goods or services on which Dunlap relies qualify as DTPA goods or services, they are not central to the Agreement. Dunlap responds that this case is controlled by *Texas Cookie*.  Mary Kay contends that *Texas Cookie* is distinguishable and that this case is more analogous to *Fisher Controls*.

The court concludes that the terms of the Agreement distinguish it from the franchise agreement in *Texas Cookie*.  In *Texas Cookie* the court held that the franchisees of a retail cookie store were consumers under the DTPA because, under the franchise agreement, the franchiser provided the franchisee with "a company training program, a confidential operating manual . . . [and] a 'unique system'" that includes "special merchandising, marketing and specially designed facilities, interior and exterior layout and trade dress; standards and specifications for fixtures and equipment, methods for keeping books and records, inventory control system and training and supervision." *Texas Cookie*, 747 S.W.2d at 877.  The court held that these services were central to the franchise agreement and could not be incidental to it because it then "would have been little more than the right to sell products under the 'Texas Cookie Company' name." *Id.*  Because the goods or services were central to the franchise agreement, the franchisee was a DTPA consumer.  *Id.*

In the instant case, however, the Agreement is not a franchise agreement; instead, it makes Dunlap an independent contractor of Mary Kay.  *See* Answer Ex. A at 7 ("[Dunlap] is an independent contractor for commission compensation . . . .  This is not a franchise agreement.").

Moreover, the Agreement is more analogous to the agreement in *Fisher Controls*.  In *Fisher Controls* the court held that the plaintiff was not a DTPA consumer because the "Representative Agreement" merely made him a sales representative for Fisher, not a franchisee "with [the] typical associated collateral services, such as is described in *Texas Cookie*[.]" *Id.* at 139.  This was because the plaintiff did not pay a franchisee fee under the

- 7 -

agreement, and his role under the agreement was to solicit and transmit orders to Fisher for Fisher's products (for which he received a commission). *Id.* Additionally, the plaintiff could purchase Fisher's products at a discount and resell them on his own behalf and could at his own expense attend training sessions that Fisher provided. The Agreement between Mary Kay and Dunlap is similar to the agreement in *Fisher Controls*. Under the Agreement, Dunlap is not a franchisee, did not pay a fee for any of the rights she received from the Agreement, received commissions based on the sales made by her and others in her sales group, and could attend training sessions that Mary Kay conducted. The objective of the transaction in *Texas Cookie* was not merely to sell products under the name "Texas Cookie Company," but also to acquire the goods and receive the training and supervising services needed to successfully run the business. The Agreement's objective in this case, like the agreement in *Fisher Controls*, is to provide Dunlap various intangible rights and privileges as an NSD; the objective is not to provide her with the facilities, equipment, or other necessary goods and services to operate a business as would a common franchise.[3]  *Cf. Harris*, 2002 WL 24581, at * 5 (holding that appellee's acquisition of flower shop made appellee a consumer under the DTPA because it included the acquisition of physical assets such as equipment and inventory); *see also Volvo Constr. Equip. N.A., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 606 (4th Cir. 2004) ("[R]eceipt of collateral services provided to FEC by

---

[3]Even if, as Dunlap's pleadings suggest, the objective of the Agreement is characterized as Dunlap's owning her own business, the acquisition of a business alone does not make someone a consumer under the DTPA. *See Texas Cookie*, 747 S.W.2d at 877.

- 8 -

Champion was not an objective of the Dealer Agreement.  The collateral services Champion provided to the Dealers included sales advice, catalogues, manuals, instruction booklets, and advertising signs[,]" but were "merely incidental to FEC's objective of being an authorized Champion dealer.").  The court therefore holds that, even assuming *arguendo* that the Agreement involves Dunlap's acquisition of goods or services,[4] these goods or services are "merely *incidental* to the transaction, rather than being *an objective* of the transaction." *Fisher Controls*, 911 S.W.2d at 139 (emphasis in original).

2

Assuming *arguendo* that Dunlap acquired goods or services under the Agreement *and* that these goods or services were part of the objective of the Agreement rather than incidental to it, Dunlap's allegations are still inadequate to show that she is a DTPA consumer.  This is so because the goods or services allegedly acquired do not form the basis of the complaint. *See Lonergan*, 1999 WL 462333, at *3 (holding that to be DTPA consumer, "the goods or services [acquired] must form the basis of the[] complaint.").  Dunlap alleges violations of the DTPA based on Mary Kay's repeated representations to her that her status as an NSD "afford[ed] [her] complete ownership of [her] 'own business,'" yet under the terms of the Agreement, Mary Kay failed to compensate Dunlap or allow her to sell her business upon

---

[4]Because the court holds that Dunlap is not a consumer under the DTPA (because any goods or services she acquired under the Agreement were incidental to the objective of the transaction), the court need not decide whether Dunlap actually acquired any goods or services under the Agreement or reach Mary Kay's other arguments for why Dunlap is not a DTPA consumer.

termination of the Agreement.  Answer at 6.  Dunlap does not allege that the goods and services provided to her under the Agreement—the right to receive a 50% discount on certain Mary Kay products, the right to purchase or receive promotional items and materials, the right to receive special recognition, financial compensation, and specialized education and training, the right to access customer reports and information, and the right to use certain copyrighted materials—form the basis of her DTPA claim.  Even in cases where the court has determined that the goods or services were an objective of the transaction, in order for the claimant to qualify as a consumer, the DTPA claim must be based on those goods or services.  For example, in *Texas Cookie* the court held that the franchisee was a DTPA consumer because the goods or services to be provided under the franchise agreement were an objective of the transaction and the basis for the plaintiff's DTPA claim was, *inter alia*, an inadequate supply of the goods and services.  *Id.* at 876 ("[A]ppellees claim that . . . inadequate training in cookie baking was provided[, and] inadequate cookie batter was supplied.").  In *Harris* the court held that the purchaser of a flower shop and its equipment and inventory was a consumer under the DTPA because the purchase of the equipment and inventory was an objective of the transaction and the seller of the flower shop made misrepresentations as to the state and standard of the equipment and inventory.  *Id.* at *4. Unlike the claimants in *Texas Cookie* and *Harris*, Dunlap does not complain about any of the goods or services she allegedly acquired under the Agreement, but rather bases her DTPA claim on the lack of opportunity to sell or otherwise transfer her business.  Accordingly, the court concludes that Dunlap is not a DTPA consumer for the additional reason that any goods

or services acquired as part of the Agreement do not form the basis of her DTPA claim.  *See Meineke Disc. Muffler*, 999 F.2d at 125 (holding that franchisee was not DTPA consumer because DTPA claim was based on misrepresentations about franchisor's intangible trademarks "and not any equipment or services provided by Meineke"); *see also Fisher Controls*, 911 S.W.2d at 139 n.1 (noting that plaintiff's DTPA complaints were not about the quality of products sold under representative agreement).

Because Dunlap has not plausibly pleaded that she is a DTPA consumer with respect to the transaction at issue, the court dismisses her DTPA claims.  *See Chastain*, 700 S.W.2d at 581 ("If the purchasers are not consumers, then they have no standing under the act.  Only consumers may recover under Tex. Bus. & Com. Code Ann. § 17.50(a).").[5]

IV

The court turns next to Dunlap's counterclaim under the Sherman Act.

A

Section 1 of the Sherman Act provides that "[e]very contract . . . in restraint of trade or commerce among the several States . . . is declared to be illegal."[6] 15 U.S.C. § 1.  "The

---

[5]Because the court is dismissing Dunlap's DTPA claims on this basis, it need not reach Mary Kay's arguments regarding whether Dunlap has adequately pleaded an underlying DTPA violation.  This includes Dunlap's contention that Mary Kay violated § 2.210 of Texas Business and Commercial Code, because Dunlap relies on this alleged violation only to demonstrate an underlying DTPA violation.

[6]Although Dunlap's counterclaims are not entirely clear, the court construes her federal antitrust counterclaim as one brought under § 1 of the Sherman Act.  This court does so because, *inter alia*, she alleges that Mary Kay "vertically restrain[ed] trade," and the parties' briefs and citations treat the claim as one brought under § 1 of the Sherman Act.

- 11 -

rule of reason is the accepted standard for testing whether a practice restrains trade in violation of § 1."[7]  *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007).  "Under the rule of reason, [the court] examine[s] the effect of the alleged restraint on competition, considering all the circumstances, 'including the facts peculiar to the business and the history of, reasons for, and market impact of the restraint.'"  *PSKS, Inc. v. Leegin Creative Leather Prods.*, 615 F.3d 412, 417 (5th Cir. 2010) (quoting *Royal Drug Co. v. Group Life & Health Ins. Co.*, 737 F.2d 1433, 1436 (5th Cir. 1984)).  "Appropriate factors to take into account include specific information about the relevant business and the restraint's history, nature, and effect."  *Leegin Creative Leather Prods.*, 551 U.S. at 885 (internal quotation marks and citations omitted).  "Whether the businesses involved have market power is a further, significant consideration."  *Id.*  The court then "balance[s] the anticompetitive evils of a restrictive practice . . . against any procompetitive benefits or justifications within the confines of the relevant market."  *PSKS*, 615 F.3d at 417 (internal quotation marks and citations omitted).

"Market considerations provide the objective benchmark for the measurement of competitive impact[;] thus [there can] be no rational ascertainment of competitive injury without first defining the relevant market."  *R.D. Imps. Ryno Indus. Inc. v. Mazda Distrib.*

---

[7]The rule of reason does not govern all claims under § 1 of the Sherman Act.  Certain restraints are considered unlawful *per se*, such as "horizontal agreements among competitors to fix prices . . . or to divide markets."  *Leegin Creative Leather Prods.*, 551 U.S. at 886.  Because Dunlap does not allege that Mary Kay's actions are unlawful *per se*, the court applies rule of reason analysis to her § 1 claim.

*(Gulf), Inc.*, 807 F.2d 1222, 1224 (5th Cir. 1987) (citations omitted).  "[T]he relevant market is defined in terms of product differentiation and geographical boundaries."  *Id.*  "Market definition, then, has two relevant dimensions—characterization of the product itself and characterization of the relevant geographic market in which that product is sold."  *Id.* at 1224-25.  "Proof that the defendants' activities, on balance, adversely affected competition in the appropriate *product and geographic markets* is essential to recovery under the rule of reason."  *Apani Sw., Inc. v. Coca-Cola Enter., Inc.*, 300 F.3d 620, 627 (5th Cir. 2002) (quoting *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc.*, 123 F.3d 301, 307 (5th Cir. 1997)) (emphasis in original).  Although the identification of relevant market is typically a question of fact,

> [w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may be granted.

*Id.* at 628.  "[T]he alleged geographic market must correspond to the commercial realities of the industry and be economically significant."  *Id.* (citing *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 336-37 (1962)).  Economic significance is assessed by determining "whether the geographic area contains an appreciable segment of the product market."  *Id.* at 629.

B

Dunlap alleges that the non-compete clause in the Agreement is an unreasonable vertical restraint on trade, in violation of § 1 of the Sherman Act.  Mary Kay moves to dismiss this counterclaim, arguing that Dunlap's allegations do not plead a plausible § 1 claim.  Mary Kay maintains that Dunlap has failed to allege sufficient facts that define the relevant product and geographic market, define Mary Kay's market power, or demonstrate how the non-compete clause adversely effects competition.  Dunlap responds that her allegations establish the relevant market and are sufficient to state a plausible claim under the Sherman Act.

In support of her Sherman Act claim, Dunlap alleges that

> [t]he anti-competition covenants on which [Mary Kay] insists every [NSD must] sign . . . are part of a concerted and effective effort by [Mary Kay] to vertically restrain trade by tying up and eliminating potential competition from [Mary Kay's] independent contractors and other direct sales companies much smaller than [Mary Kay] who sell cosmetic products similar to [Mary Kay's] line of cosmetic products, particularly in, but not limited to, the Texas market.

Answer at 9-10.  Dunlap has failed to plead a plausible claim under § 1 of the Sherman Act. The allegations define the relevant product market as "cosmetic products similar to [Mary Kay's] line of cosmetic products," and the relevant geographic market as "particularly in, but not limited to, the Texas market."  *Id.*  Such broad descriptions do not contain the factual specificity required for the court to draw the reasonable inference that Mary Kay is liable for the misconduct alleged.

- 14 -

Dunlap's allegations concerning the relevant product market "fail[] to define [the] proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand." *Apani*, 300 F.3d at 628. And the allegations do not specify the precise contours of the geographic market; instead, the relevant geographic market is described as at least Texas, but could be much larger. In other words, even after drawing all inferences in favor of Dunlap, the court lacks factual allegations concerning the relevant product and geographical markets to assess whether it is plausible that Mary Kay's non-compete clause adversely affects competition.

Accordingly, the court dismisses Dunlap's claim under § 1 of the Sherman Act.

V

The court now considers Mary Kay's Rule 12(f) motion to strike Dunlap's general denial and three affirmative defenses.

A

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f). The decision to grant a motion to strike is within the court's discretion. *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004) (Fitzwater, J.), *aff'd on other grounds*, 277 Fed. Appx. 483 (5th Cir. 2008). "Both because striking a portion of a pleading is a drastic remedy, and because it is often sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *Id.* (citing *FDIC v. Niblo*, 821 F.Supp. 441, 449 (N.D. Tex. 1993) (Cummings, J.)). "Although motions to strike a defense are generally

- 15 -

disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) (citations omitted).

B

Mary Kay moves to strike Dunlap's general denial for failure to comply with Rule 8(b). Rule 8(b)(3) states that:

> [a] party that intends in good faith to deny all the allegations of a pleading—including the jurisdictional grounds—may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.

In her answer, Dunlap generally denies all the allegations of Mary Kay's state-court original petition, except she admits that she lives in Troy, Missouri. *See* Answer at 1. General denials are uncommon in federal court because "situations in which the complaint can be completely controverted are quite rare." 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1265, at 549 (3d ed. 2004). "This means that an answer consisting of a general denial will be available to a party acting in good faith only in the most exceptional cases." *Id.*

Mary Kay argues that Dunlap's general denial should be stricken because Dunlap relies on several Mary Kay allegations that are encompassed within Dunlap's general denial in conjunction with her affirmative defenses and counterclaims. Mary Kay posits that Dunlap could not have intended in good faith to deny these allegations. Dunlap responds that her general denial should not be stricken because Rule 8(d) allows for inconsistent and

alternative allegations and denials, and because she was responding to a pleading filed in state court. Mary Kay maintains that although inconsistent or alternative pleadings are permitted, they are only allowed when asserted in good faith, when the pleader is genuinely in doubt about the facts in question. Mary Kay also contends that, regardless of whether Dunlap was responding to an original state-court petition or to a federal-court complaint, once in federal court, the federal pleading rules govern.

The court holds that Dunlap's general denial is impermissible. As framed, the general denial denies even such facts as the existence of various aspects of the Mary Kay business model that Dunlap acknowledges and that form the basis of Dunlap's own DTPA claims. *See, e.g.,* Answer 6. For example, the general denial effectively denies Mary Kay's allegation that "Dunlap executed an Independent National Sales Director Agreement . . . on March 1, 2005." But Dunlap attaches the Agreement, which she signed on March 1, 2005, to her Answer.[8] Even if Dunlap intends to deny parts of the allegations related to the Agreement, Rule 8(b)(4) requires her to "admit the part that is true and deny the rest."[9]

---

[8]Dunlap argues that this is permissible because she intends to demonstrate that the Agreement is void and unenforceable and because she was unsure whether Mary Kay would agree that the version to which Mary Kay referred in its pleadings was the same one that Dunlap attached to her answer. Neither of these arguments, however, prevents Dunlap from admitting in good faith that she entered into the Agreement on March 1, 2005. Such an admission does not prevent her from pleading that the Agreement is void or unenforceable, or that Mary Kay introduced into evidence a version of the Agreement different from the one she admitted signing.

[9]Rule 8(b)(2) also requires a denial to "fairly respond to the substance of the allegation." The cited example shows that Dunlap did not comply with the requirements of Rule 8(b)(2).

Dunlap's reliance on the ability to make inconsistent or alternative pleadings under Rule 8(d) as a justification for her general denial is misplaced.  Under Rule 8(d), a party should not assert inconsistent or alternative allegations "unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims or defenses."  5 Wright & Miller, *supra*, § 1285, at 741; *see also Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996) ("[A] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question.").

Accordingly, the court grants Mary Kay's motion to strike Dunlap's general denial and directs that Dunlap's amended answer comply with Rule 8(b)(3).

## VI

Mary Kay moves to strike several of Dunlap's affirmative defenses.

## A

The parties dispute whether the pleading standards set forth in *Twombly* and *Iqbal* apply to affirmative defenses.  This court has held that they do not.  *See SEC v. Cuban*, 798 F.Supp.2d 783, 795 n.1 (N.D. Tex. 2011) (Fitzwater, C.J.) (citing *EEOC v. Courtesy Bldg. Servs., Inc.*, 2011 WL 208408, at *2 (N.D. Tex. Jan. 21, 2011) (Fitzwater, C.J.)).  Instead, the court applies the "fair notice" pleading standard for affirmative defenses set forth in *Woodfield v. Bowman*, 193 F.3d 354 (5th Cir. 1999).  *See Cuban*, 798 F.Supp.2d at 795 n.1. "This requires that the party asserting the affirmative defense allege sufficient facts to give the opposing party fair notice of the nature of the affirmative defense and prevent unfair

surprise." *Id.* Although the court in *Woodfield* noted that in some instances merely pleading the name of the affirmative defense may be sufficient, a "fact-specific inquiry" is required to determine whether the pleadings set forth the "minimum particulars" needed to ensure the plaintiff is not the victim of unfair surprise. *See Woodfield*, 193 F.3d at 362.

B

Mary Kay moves to strike Dunlap's affirmative defenses of estoppel, failure of consideration, illegality, ratification and waiver.

The court denies the motion to strike the affirmative defenses of failure of consideration and illegality because, in this case, the simple assertion of the name of the defense in conjunction with Dunlap's allegations and the character of Mary Kay's claims gives Mary Kay fair notice of the defense. In response to Mary Kay's breach of contract claim involving a single contract, Dunlap asserts contract specific defenses—failure of consideration and illegality—and attaches the contract at issue to her answer. Moreover, Dunlap makes specific allegations related to the illegality defense. Mary Kay therefore has fair notice of Dunlap's failure of consideration and illegality defenses and will not be unfairly surprised by them. *See, e.g., TracFone Wireless, Inc. v. King Trading, Inc.*, 2008 WL 4826035, at *2 (N.D. Tex. Nov. 6, 2008) (Boyle, J.) (denying motion to strike affirmative defenses asserted in response to breach of contract claim because defendants provided some factual explanation for them).

The court grants Mary Kay's motion to strike Dunlap's affirmative defenses of estoppel, ratification, and waiver because Dunlap has not pleaded the "minimum particulars"

- 19 -

that are necessary to provide fair notice.  *See Woodfield*, 193 F.3d at 362.  In conjunction

with Dunlap's other allegations, Mary Kay must speculate as to how these defenses *could*

apply.  Unlike the defenses of failure of consideration and illegality, the defenses of estoppel,

ratification, and waiver are not contract-specific defenses; thus Mary Kay lacks fair notice

of the "contractual agreement or other act that forms the basis of [Dunlap's] defense."

*Courtesy Bldg. Servs.*, 2011 WL 208408, at *4.  Without allegations related to the particulars

of these defenses, it is unclear whether they relate to the contract or to other actions that

Dunlap has left unspecified.  *See Software Publrs. Ass'n v. Scott & Scott, LLP*, 2007 WL

2325585, at *2 (N.D. Tex. Aug. 15, 2007) (Fish, C.J.) (striking affirmative defenses of

waiver, estoppel, ratification, laches, and unclean hands where mere naming did not provide

plaintiff fair notice of defenses being advanced).

Accordingly, the court strikes Dunlap's affirmative defenses of estoppel, ratification,

and waiver.

C

Mary Kay moves to strike Dunlap's affirmative defense that Mary Kay violated

§ 17.46 of the DTPA.

Mary Kay argues that Dunlap's DTPA affirmative defense must be stricken for the

same reasons as must her DTPA counterclaim.  The court agrees.  Dunlap's pleadings

demonstrate that she is not a DTPA consumer and therefore cannot maintain a DTPA

counterclaim against Mary Kay.  The court therefore strikes Dunlap's affirmative defense

based on Mary Kay's alleged violations of § 17.46.[10]

## D

Mary Kay moves to strike Dunlap's affirmative defense that the Agreement violated § 2.210(b) of the Texas Business and Commerce Code.[11]

Dunlap argues that § 13 of the Agreement, which prevents Dunlap from assigning or transferring her rights under the Agreement, violates § 2.210(b).  Section 2.210(b) provides:

> *Unless otherwise agreed* all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance. A right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation can be assigned despite agreement otherwise.

*Id.* (emphasis added).  Mary Kay argues that the Agreement could not violate § 2.210(b) and must therefore be stricken because § 2.210(b) specifically states that it only applies "[u]nless otherwise agreed."  The court holds that because, as presently pleaded, it is apparent that Mary Kay and Dunlap agreed that Dunlap's rights under the Agreement could not be

---

[10]Because Dunlap has not adequately pleaded that she is a DTPA consumer, and the question whether she is a consumer is one for the court to decide, the court need not decide whether these affirmative defenses must also be stricken on the ground that they are counterclaims asserted as affirmative defenses.

[11]Unlike Dunlap's counterclaims, where she appears to allege a violation of § 2.210(b) as a predicate for a DTPA counterclaim, Dunlap appears to plead as a distinct affirmative defense that Mary Kay violated § 2.210(b).

assigned or transferred, § 2.210(b) does not apply to the Agreement.[12]  The court therefore strikes Dunlap's affirmative defense based on violations of § 2.210(b).[13]

## VII

Although the court is in part granting Mary Kay's motion to dismiss and motion to strike, it will permit Dunlap to replead.  *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal).  Because there is no indication that Dunlap cannot, or is unwilling to, cure the pleading defects the court has identified, the court grants her 30 days from the date this memorandum opinion and order is filed to file amended counterclaims and affirmative defenses.

\*   \*   \*

For the reasons explained, the court grants Mary Kay's motion to dismiss Dunlap's DTPA and federal antitrust counterclaims and grants in part and denies in part Mary Kay's motion to strike Dunlap's general denial and certain affirmative defenses, but grants Dunlap

---

[12]To the extent that Dunlap relies on the absolute right under § 2.210(b) to assign damages for breach of contract, Dunlap does not assert a breach of contract claim against Mary Kay, and this absolute right does not apply.

[13]Because the court is granting Mary Kay's motion to strike Dunlap's affirmative defense based on violations of the Texas Business and Commerce Code, it need not decide whether it must also be stricken on the ground that it is a counterclaim rather than an affirmative defense.

leave to replead.

**SO ORDERED.**

June 21, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE