IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY, INC. | § | |
| | § | |
| Plaintiff-counterdefendant, | § | |
| | § | Civil Action No. 3:12-CV-0029-D |
| VS. | § | |
| | § | |
| AMY DUNLAP, | § | |
| | § | |
| Defendant-counterplaintiff, | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff-counterdefendant Mary Kay, Inc. ("Mary Kay") moves under Fed. R. Civ.

P. 12(b)(6) to dismiss defendant-counterplaintiff Amy Dunlap's ("Dunlap's") counterclaim

under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus.

& Com. Code Ann. §§ 17.41-17.826 (West 2011 & Supp. 2012-13), and moves under Rule 12(f)

to strike two of Dunlap's affirmative defenses. For the reasons that follow, the court grants

in part and denies in part the motion to dismiss and denies the motion to strike.

I

The court's prior memorandum opinion and order in this case sets forth many of the

relevant background facts. *See Mary Kay, Inc. v. Dunlap*, 2012 WL 2358082, at *1 (N.D.

Tex. June 21, 2012) (Fitzwater, C.J.) ("*Dunlap I*"). To place the present decision in context,

the court will recount additional pertinent facts and procedural background.

Mary Kay is a manufacturer and distributor of cosmetics and related products.[1]  It sells its products at wholesale prices to Independent Beauty Consultants ("IBCs"), who in turn sell them to their customers.  Mary Kay offers certain IBCs the opportunity to become National Sales Directors ("NSDs").  It provides NSDs special benefits and opportunities that it does not make available to IBCs.

In 2005 Dunlap became an NSD and entered into an Independent National Sales Director Agreement (the "Agreement") with Mary Kay.  Dunlap alleges that she performed her obligations under the Agreement and became one of Mary Kay's largest distributors, and that throughout her tenure as a distributor,  Mary Kay continually represented to her that she owned her own business and that Mary Kay cosmetic products were valuable retail items. When Dunlap voluntarily terminated the Agreement, however, Mary Kay failed to pay her the value of her business.

Mary Kay sued Dunlap in state court for breach of contract.  Dunlap removed the case to this court.  In her amended answer, she asserts a counterclaim under the DTPA and an alternative claim for reformed agreement.  Dunlap alleges that Mary Kay violated the DTPA by failing to pay her the value of her business despite its numerous statements that she owned her own business and by representing that its cosmetic goods are valuable at the retail level.

Mary Kay moved to dismiss under Rule 12(b)(6) and to strike certain affirmative

---

[1]In deciding Mary Kay's Rule 12(b)(6) motion, the court construes Dunlap's pleading in the light most favorable to her, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in her favor.  *See*, *e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

defenses under Rule 12(f).  In *Dunlap I* the court granted the motion in part, holding, *inter alia*, that Dunlap had not pleaded a plausible DTPA counterclaim.  This was because she had not alleged that she was a DTPA "consumer," because any goods or services that she acquired were not an important objective of the Agreement, and, assuming *arguendo* that they were, these goods or services were not the basis of her complaint.  *Dunlap I*, 2012 WL 2358082, at *3-4.  The court granted Dunlap leave to replead, and Dunlap amended her DTPA counterclaim.  Mary Kay now moves under Rule 12(b)(6) to dismiss to the amended DTPA counterclaim and under Rule 12(f) to strike two of Dunlap's affirmative defenses.

## II

The court turns first to Mary Kay's motion to dismiss Dunlap's amended DTPA counterclaim.

### A

In deciding Mary Kay's motion, the court evaluates the sufficiency of Dunlap's counterclaim by "accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to [Dunlap]."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted).  To survive Mary Kay's motion to dismiss, Dunlap must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

B

As the court explained in *Dunlap I*, the DTPA provides that a "*consumer* may maintain an action" for:

> (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:
> (A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and
> (B) relied on by a consumer to the consumer's detriment;
> (2) breach of an express or implied warranty; [or]
> (3) any unconscionable action or course of action by any person[.]

Tex. Bus. & Com. Code Ann. § 17.50(a) (West 2011) (emphasis added). Under the DTPA, there are two requirements for consumer status. "First, the person must seek or acquire goods or services by lease or purchase." *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App. 2007, pet. denied) (citing Tex. Bus. & Com. Code Ann. § 17.45(4)). Although '[t]he DTPA does not apply to wholly intangible property rights," *Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 125 (5th Cir. 1993) (citing *Texas Cookie Co. v. Hendricks &*

- 4 -

*Peralta, Inc.*, 747 S.W.2d 873, 876 (Tex. App. 1988, writ denied)), this first requirement is satisfied when "purchased goods or services [are] an objective of the transaction, not merely incidental to it," *FDIC v. Munn*, 804 F.2d 860, 865 (5th Cir. 1986).  *See Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707-08 (Tex. 1983) (holding that claimant sought or acquired purchase of goods where a loan, which is not a good or service, was connected to the purchase of a good, which was the objective of the transaction).  "Second, the goods or services sought or acquired must form the basis of the party's complaint." *Fix*, 242 S.W.3d at 159 (citing *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351-52 (Tex. 1987)).  "The question of whether a plaintiff is a consumer under the DTPA is a question of law for the trial court." *Fisher Controls Int'l, Inc. v. Gibbons*, 911 S.W.2d 135, 139 (Tex. App. 1995, writ denied).  "If the purchasers are not consumers, then they have no standing under the act.  Only consumers may recover under Tex. Bus. & Com. Code § 17.50(a)." *Chastain v. Koonce*, 700 S.W.2d 579, 581 (Tex. 1985).

## C

In *Dunlap I* the court held that Dunlap had not adequately pleaded that she was a DTPA consumer because, "[a]ssuming *arguendo* that [she] acquired goods or services under the Agreement *and* that these goods or services were part of the objective of the Agreement rather than incidental to it . . . , the goods or services allegedly acquired do not form the basis of the complaint." *Dunlap I*, 2012 WL 2358082, at *4 (citing *Lonergan v. A.J.'s Wrecker Serv. of Dall., Inc.,* 1999 WL 462333, at *3 (N.D. Tex. July 6, 1999) (Fitzwater, J.) (holding that to be DTPA consumer, "the goods or services [acquired] must form the basis of the[]

complaint.")).  After identifying the allegedly-acquired goods and services as "the right to receive a 50% discount on certain Mary Kay products, the right to purchase or receive promotional items and materials, the right to receive special recognition, financial compensation, and specialized education and training, the right to access customer reports and information, and the right to use certain copyrighted materials," the court reasoned that "Dunlap does not complain about any of [these] goods or services . . . , but rather bases her DTPA claim on the lack of opportunity to sell or otherwise transfer her business."  *Id.* at *4.

### D

To determine whether Dunlap cured her pleading deficiencies by sufficiently pleading her status as a DTPA consumer, the court will attempt to identify from her amended answer (1) the goods or services that she alleges she sought or acquired and (2) the basis for her complaint.  The court holds that she has pleaded her consumer status, albeit on a considerably more limited basis than she may have intended.

### 1

Dunlap alleges that she qualifies as a consumer because she acquired goods and services from Mary Kay in the form of her beauty consulting business.  She complains that Mary Kay deceived her by representing that, as an "independent dealer," she was being provided a business opportunity to be the "owner of her own business," when, in fact, Mary Kay never compensated her for her business after taking it from her without compensation when she resigned as an NSD, and would not allow her to sell or will her "business."  Am. Answer ¶¶ 21 and 37.  Dunlap avers that when her NSD Agreement was terminated, she lost

- 6 -

her business, which consisted of "a 'dealership' made up of a bundle of services to be performed by Mary Kay." *Id.* at ¶ 22. According to Dunlap, the bundle of goods and services, including goods she purchased from Mary Kay, was fundamental and at the core of her own business. *Id.* at ¶ 23. Dunlap makes other references to unspecified "goods and services." *Id.* at ¶¶ 21, 23, 24, and 34. But these allegations only plead the acquisition of a business, which is by itself an intangible. *See Dunlap I*, 2012 WL 2358082, at *2 ("Both the acquisition of a business entity, *see Texas Cookie*, 747 S.W.2d at 877, and the right to act as a company's sales representative, *see Fisher Controls*, 911 S.W.2d at 139, are intangible property rights that the DTPA does not cover."). Therefore, although the acquisition of her beauty consulting business from Mary Kay forms the basis of her complaint, it cannot support consumer status.

2

Dunlap also complains that she acquired cosmetic goods from Mary Kay at wholesale, but that Mary Kay deceived her as to the non-existence of a viable retail market for the resale of the goods, making the sale of "her own business" to her a sham transaction that was of little or no value, and that she received no or very little value from the bundle of services and goods she purchased. *Id.* at ¶ 24. This is in part sufficient to allege consumer status because Dunlap is relying on the acquisition of goods (cosmetic goods), and she is complaining that the goods were not as represented.

Her complaint about the cosmetic goods, however, does not form the basis of her complaint that she is unable to sell her business. Hence, she has not alleged consumer status

- 7 -

for that part of her claim.[2]  The recoverable damages for her DTPA claim would therefore seem to be far more modest than what she alleges.  The inability to sell readily at retail the quantity of Mary Kay cosmetic goods that she purchased at wholesale would not appear to support mental anguish in the form of "intense and continuous feelings of humiliation," the "loss of her investment of more than $125,000.00 and damages due to the loss of her ability to assign the income stream from her business, constituting economic damages . . . in an amount which is presently unascertained but [that Dunlap] believes to be in excess of $1,000,000.00."  *Id.* at ¶ 38.

---

[2]To establish consumer status, Texas courts have sometimes required only that the complaint be based indirectly on the acquired goods and services.  For instance, in *Jabri v. Alsayyed*, 145 S.W.3d 660, 671 (Tex. App. 2004, no pet.), Alsayyed leased a convenience store that Jabri owned, paying distinct amounts for the store's goodwill and inventory.  After operating the store, Alsayyed brought a DTPA action against Jabri alleging that he misrepresented the goodwill of the store by stating it had a substantial customer base and would generate a specified profit every month, and misrepresented the condition of the inventory.  *Id.* at 665, 667.  The court affirmed an award of actual damages that included the harm from overpaying for goodwill, and held that Alsayyed had consumer status because, although goodwill is an intangible, the purchased inventory was also an objective of the transaction.  *Id.* 667, 671.  *See also Wheeler v. Box*, 671 S.W.2d 75, 77-78 (Tex. App. 1984, no pet.) (holding purchaser of business was consumer because transaction included goods and services, even though at least one misrepresentation involved whether application for trademark was made, which is not a good or service under DTPA).  The complaints in *Jabri* and *Wheeler* were about the value of the purchased company, which value was affected by intangibles as well as by the acquired good or service.  By contrast, Dunlap seeks to recover in part for misrepresentations about a contractual provision that prevents her from selling or otherwise transferring her business; this provision in no way depends on the goods or services acquired.  Because the misrepresented cosmetic goods have no bearing on her complaint about the contractual provision, Dunlap fails the second prong of the consumer status test as to this component of her DTPA counterclaim.

- 8 -

3

Dunlap also identifies the following specific goods and services that she had acquired from Mary Kay and that made up "her business": her car lease payment; her "Family Security Program," which included death and disability insurance and "retirement" benefits; Mary Kay "intouch" virtual office services; the Mary Kay Website (back office marykayintouch.com); National News Notes monthly motivation and recognition for NSDS; Applause Magazine (Monthly recognition and sales tips for members of the Mary Kay sales force; the recognition and gratification received from appearances, giving speeches to those in attendance, and training at seminars, career conferences, and leadership meetings (company sponsored events); monthly NSD legacy leadership training CDs; and training webinars provided by Mary Kay for NSDs. *Id.* at ¶ 32 (first of two paragraphs numbered ¶ 32). But these goods and services do not support consumer status because they do not form the basis of her complaint that she is unable to sell her business or that Mary Kay cosmetic products do not have the represented retail value. She in effect alleges only that she lost these goods and services when her relationship with Mary Kay was terminated; she does not allege any deceptive act regarding these goods and services.

4

Dunlap also alleges that she invested over $125,000 to acquire "her own business," and that, in addition to sums paid directly to Mary Kay, she and her husband invested funds in numerous categories of purchases in order for her to qualify and maintain her qualification as an NSD under the Agreement. *Id.* at ¶ 36. But apart from the goods that the

court has held are sufficient to confer DTPA consumer status for her claim about the deceptively low retail value of Mary Kay cosmetic products, these investments are not shown to be the basis for her complaint for the same reason as explained above—she does not complain about the specific goods and services that she purchased as investments in her business.[3]

### E

The court therefore grants in part and denies in part Mary Kay's motion to dismiss Dunlap's amended DTPA counterclaim.  The court concludes that Dunlap has adequately pleaded her status as a DTPA consumer, and thus plausibly pleaded a DTPA claim, to the extent that she alleges that she acquired cosmetic goods from Mary Kay at wholesale, but that Mary Kay deceived her as to the non-existence of a viable retail market for the resale of the goods.

### III

Mary Kay moves under Rule 12(f) to strike two of Dunlap's affirmative defenses (nos. 7 and 8).[4]

---

[3]Dunlap also alleges that she qualifies as a DTPA consumer because her Mary Kay investments included acquiring physical assets, such as inventory and infrastructure (including her website and virtual back office).  Am. Answer ¶ 35.  But her reliance on infrastructure is insufficient because it is not the basis of her DTPA claim—she nowhere alleges that these physical assets were not as represented.

[4]The court does not suggest that these are properly considered affirmative defenses. Generally speaking, affirmative or avoidance defenses are unrelated to the plaintiff's prima facie case.  *See AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, 2005 WL 3148284, at *5 n.10 (N.D. Tex. Nov. 21, 2005) (Fitzwater, J.).  Avoidance or affirmative

The court applies a "fair notice" pleading standard for affirmative defenses, as set forth in *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). *SEC v. Cuban*, 798 F.Supp.2d 783, 795 n.13 (N.D. Tex. 2011) (Fitzwater, C.J.). "This requires that the party asserting the affirmative defense allege sufficient facts to give the opposing party fair notice of the nature of the affirmative defense and prevent unfair surprise." *Id.* Although the court in *Woodfield* noted that in some instances merely pleading the name of the affirmative defense may be sufficient, a "fact-specific analysis" is required to determine whether the pleadings set forth the "minimum particulars" needed to ensure the plaintiff is not the victim of unfair surprise. *See Woodfield*, 193 F.3d at 362.

Without suggesting that either affirmative defense, or that the counterclaim analog of either affirmative defense,[5] would survive a motion for summary judgment, the court concludes that Dunlap's amended answer gives fair notice of the nature of the affirmative defenses and prevents unfair surprise. Accordingly, the motion to strike is denied.

---

defenses include "'allegations . . . that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and . . . that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer.'" *Barrow v. Greenville Indep. Sch. Dist.*, 2005 U.S. Dist. LEXIS 20150, at *2 (N.D. Tex. Mar. 10, 2005) (Fitzwater, J.) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1271, at 585 (3d ed. 2004)). Nevertheless, because the court is only deciding at this time whether Dunlap's amended answer gives fair notice of the nature of these affirmative defenses and prevents unfair surprise, it need not resolve whether they qualify as affirmative defenses.

[5]Dunlap asserts these affirmative defenses as components of her DTPA counterclaim.

\*     \*     \*

For the reasons explained, the court grants in part and denies in part Mary Kay's motion to dismiss Dunlap's DTPA counterclaim and denies its motion to strike affirmative defenses nos. 7 and 8.

**SO ORDERED.**

December 20, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE

- 12 -