# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISON

| | | |
|---|---|---|
| **MARY KAY INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case Number 3-12-CV-00029-D** |
| **vs.** | § | |
| | § | |
| **AMY DUNLAP, and AIMEE POWER,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

---

### MARY KAY INC.'S ANSWER TO AMY DUNLAP'S AMENDED COUNTERCLAIM

---

Date:  January 3, 2012

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
John T. Cox III
State Bar No. 24003722
Christopher J. Schwegmann
State Bar No.24051315
Gail A. Hayworth
Texas Bar No. 24074382
Lynn Tillotson Pinker & Cox, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas  75201
(214) 981-3800
(214) 981-3839 – telecopier

**COUNSEL FOR PLAINTIFF**
**MARY KAY INC.**

Plaintiff/Counter-Defendant Mary Kay Inc. ("Mary Kay") files this Answer to Defendant/Counter-Plaintiff Amy Dunlap's ("Dunlap") Counterclaims pleaded in her Amended Answer and Counterclaim (Doc. No. 49) and narrowed by the Court's December 12, 2012 Memorandum Opinion and Order granting in part and denying in part Mary Kay's motion to dismiss (Doc. No. 68).

## I.     ANSWER TO DUNLAP'S COUNTERCLAIMS

### 1.     DECEPTIVE TRADE PRACTICES

19.     Mary Kay denies the allegations re-alleged in paragraph 19 of Dunlap's Amended Answer and Counterclaim.

20.     Mary Kay denies the allegations contained in paragraph 20 of Dunlap's Amended Answer and Counterclaim.

21.     Mary Kay denies the allegations contained in paragraph 21 of Dunlap's Amended Answer and Counterclaim.  Mary Kay further notes that the Court dismissed Dunlap's Deceptive Trade Practice Act ("DTPA") counterclaim based on these allegations.  *See* Order (Doc. No. 68) at 7 ("[A]lthough the [alleged] acquisition of her beauty consulting business from Mary Kay forms the basis of her complaint, it cannot support consumer status.").

22.     Mary Kay admits that when Dunlap voluntarily terminated her NSD Agreement, any and all rights and privileges that Dunlap had previously enjoyed under the NSD Agreement were thereby terminated.  *See* Agreement at § 10.4 ("Upon termination of this Agreement any and all rights and privileges NSD has in regard to National Sales Director activities under this Agreement shall terminate.").  Otherwise, Mary Kay denies all remaining allegations contained in paragraph 22 of Dunlap's Amended Answer and Counterclaim.  Mary Kay further notes that

the Court dismissed Dunlap's DTPA counterclaim based on these allegations.  *See* Order at 2, 6-7 (dismissing Dunlap's DTPA counterclaim based on the alleged acquisition of "her business").

23.    Mary Kay denies the allegations contained in paragraph 23 of Dunlap's Amended Answer and Counterclaim.  Mary Kay further notes that the Court dismissed most of Dunlap's DTPA counterclaim premised on these allegations.  *See* Order at 6-7 (holding that pleading the acquisition of a business cannot support consumer status); *id.* at 7-8 (holding that Dunlap has failed to allege consumer status for her claim that she was unable to sell her business); *id.* "t 9 (holding that the goods and services allegedly acquired from Mary Kay as part of 'her business"—her car lease payment, her "Family Security Program," Mary Kay "intouch" virtual office services, the Mary Kay website, National News Notes, Applause Magazine, the recognition and gratification received from appearances, monthly NSD legacy leadership training CDs, and training webinars provided by Mary Kay for NSDs—do not form the basis of her complaint and therefore do not support consumer status); *id.* at 9-10 (Regarding Dunlap's alleged investment of over $125,000 to acquire "her own business," "apart from the goods that the court has held are sufficient to confer DTPA consumer status for her claim about the deceptively low retail value of Mary Kay cosmetic products, these investments are not shown to be the basis for her complaint for the same reason as explained above—she does not complain about the specific goods and services that she purchased as investments in her business.").

24.    Mary Kay denies the allegations contained in paragraph 24 of Dunlap's Amended Answer and Counterclaim.  Mary Kay further notes that the Court held that these allegations fail to support Dunlap's DTPA counterclaim that she was unable to sell her business and accordingly dismissed her claim regarding the inability to sell her business.  *See* Order at 7-8 ("[Dunlap's] complaint about the cosmetic goods . . . does not form the basis of her complaint that she is

unable to sell her business.  Hence, she has not alleged consumer status for that part of her claim.").

25.     Mary Kay lacks knowledge and information sufficient to admit or deny that Dunlap and her husband, "[d]uring the time she was a National Sales Director in Qualification (NIQ)," "invested more than $48,000.00 in wholesale purchase of products from Mary Kay in order to help eighteen of her Sales Directors meet the stringent $4,000.00 per month minimum qualification for each of their sales units each month for four months, in order for [Dunlap] [to] become an NSD."  Accordingly, Mary Kay effectively denies the allegation.  Mary Kay further denies all remaining allegations in paragraph 25 of Dunlap's Amended Answer and Counterclaim.

26.     Mary Kay denies Dunlap's allegation that "dozens of others among the Mary Kay sales force have qualified for NSD" through "excessive purchases."  Mary Kay lacks knowledge and information sufficient to admit or deny the remaining allegations in paragraph 26 of Dunlap's Amended Answer and Counterclaim.  Accordingly, Mary Kay effectively denies these remaining allegations.

27.     Mary Kay denies the allegations contained in paragraph 27 of Dunlap's Amended Answer and Counterclaim.

28.     Mary Kay denies the allegations contained in paragraph 28 of Dunlap's Amended Answer and Counterclaim.

29.     Mary Kay denies the allegations contained in paragraph 29 of Dunlap's Amended Answer and Counterclaim.

30.     Mary Kay denies the allegations contained in paragraph 30 of Dunlap's Amended Answer and Counterclaim.

31.     Mary Kay denies the allegations contained in paragraph 31 of Dunlap's Amended Answer and Counterclaim.   Regarding the allegations of the actions allegedly taken by Gena Gass, Michele Sudeth, Donna Meixsell and Pat Fortenberry; Mary Kay lacks knowledge and information sufficient to admit or deny these allegations and therefore effectively denies the same.

32.     Mary Kay admits that when Dunlap voluntarily terminated her NSD Agreement, any and all rights and privileges that Dunlap had previously enjoyed under the NSD Agreement were thereby terminated.  *See* Agreement at § 10.4 ("Upon termination of this Agreement any and all rights and privileges NSD has in regard to National Sales Director activities under this Agreement shall terminate.").   Otherwise, Mary Kay denies all remaining allegations contained in paragraph 32 of Dunlap's Amended Answer and Counterclaim.   Mary Kay further notes that the Court dismissed Dunlap's DTPA counterclaim based on these allegations.  *See* Order at 7-8 (holding that pleading the acquisition of a business, which by itself is an intangible, cannot support consumer status); *id.* at 9 (holding that the goods and services allegedly acquired from Mary Kay as part of 'her business"—her car lease payment, her "Family Security Program," Mary Kay "intouch" virtual office services, the Mary Kay website, National News Notes, Applause Magazine, the recognition and gratification received from appearances, monthly NSD legacy leadership training CDs, and training webinars provided by Mary Kay for NSDs—do not form the basis of her complaint and therefore do not support consumer status).

32 [second paragraph erroneously numbered 32].   Mary Kay lacks knowledge and information sufficient to admit or deny the allegations contained in the second paragraph erroneously numbered 32 of Dunlap's Amended Answer and Counterclaim and therefore effectively denies the same.

33. Mary Kay denies the allegations contained in paragraph 33 of Dunlap's Amended Answer and Counterclaim.

34. Mary Kay denies the allegations contained in paragraph 34 of Dunlap's Amended Answer and Counterclaim. Mary Kay further notes that the Court dismissed Dunlap's DTPA counterclaim based on these allegations. *See* Order at 7-8 (holding that pleading the acquisition of a business, which by itself is an intangible, cannot support consumer status); *id.* at 9 (holding that the goods and services allegedly acquired from Mary Kay as part of 'her business"—her car lease payment, her "Family Security Program," Mary Kay "intouch" virtual office services, the Mary Kay website, National News Notes, Applause Magazine, the recognition and gratification received from appearances, monthly NSD legacy leadership training CDs, and training webinars provided by Mary Kay for NSDs—do not form the basis of her complaint and therefore do not support consumer status); *id.* at 10 n.3 (holding that the alleged acquisition of physical assets such as inventory and infrastructure do not form the basis of Dunlap's complaint).

35. Mary Kay denies the allegations contained in paragraph 35 of Dunlap's Amended Answer and Counterclaim. Mary Kay further notes that the Court dismissed Dunlap's DTPA counterclaim based on these allegations. *See* Order at 10 n.3 (holding that the alleged acquisition of physical assets such as inventory and infrastructure do not form the basis of Dunlap's complaint); *id.* at 9 (holding that the goods and services allegedly acquired from Mary Kay as part of 'her business"—including her car lease payment, her website, and virtual back office—do not form the basis of her complaint and therefore do not support consumer status).

36. Mary Kay lacks knowledge and information regarding Dunlap and her husband's purchases (and their purposes) to admit or deny the allegations contained in paragraph 36 of Dunlap's Amended Answer and Counterclaim. Accordingly, Mary Kay effectively denies such

allegations.  Otherwise, Mary Kay denies the remaining allegations in paragraph 36.  Mary Kay further notes that the Court dismissed most of Dunlap's DTPA counterclaim based on these allegations.  *See* Order at 9-10 ("But apart from the goods that the court has held are sufficient to confer DTPA consumer status for her claim about the deceptively low retail value of Mary Kay cosmetic products, these investments [alleged in ¶ 36 of Dunlap's Counterclaim] are not shown to be the basis for her complaint for the same reason as explained above—she does not complain about the specific goods and services that she purchased as investments in her business.").

37.   Mary Kay denies the allegations contained in paragraph 37 of Dunlap's Amended Answer and Counterclaim.  Mary Kay further notes that the Court dismissed Dunlap's DTPA counterclaim based on these allegations.  *See* Order at 7-8 (holding that pleading the acquisition of a business, which by itself is an intangible, cannot support consumer status); *id.* at 2 & 10 (dismissing Dunlap's claim that Mary Kay violated DTPA by failing to pay her the value of her business); *id.* at 8 n.2 ("Dunlap seeks to recover in part for misrepresentations about a contractual provision that prevents her from selling or otherwise transferring her business; this provision in no way depends on the goods or services acquired.  Because the misrepresented cosmetic goods have no bearing on her complaint about the contractual provision, Dunlap fails the second prong of the consumer status test [*i.e.*, goods acquired must form basis of complaint] as to this component of her DTPA counterclaim.").

38.   Mary Kay denies the allegations contained in paragraph 38 of Dunlap's Amended Answer and Counterclaim.  Mary Kay further notes that the Court critically questioned the recoverability of Dunlap's alleged damages after narrowing Dunlap's DTPA counterclaim solely to her allegation "that she acquired cosmetic goods from Mary Kay at wholesale, but that Mary Kay deceived her as to the non-existence of a viable retail market for the resale of the goods."

*See* Order at 10.   Specifically, the Court held that "[t]he recoverable damages for [Dunlap's] [sole surviving] DTPA claim would therefore seem to be far more modest than what she alleges. The inability to sell readily at retail the quantity of Mary Kay cosmetic goods that she purchased at wholesale would not appear to support mental anguish in the form of 'intense and continuous feelings of humiliation,' the 'loss of her investment of more than $125,000.00 and damages due to the loss of her ability to assign the income stream from her business, constituting economic damages in an amount which is presently unascertained but that Dunlap believes to be in excess of $1,000,000.00.'"   *See* Order at 8 (original alternations omitted).

39.    Mary Kay denies the allegations contained in paragraph 39 of Dunlap's Amended Answer and Counterclaim.

40.    Mary Kay denies the allegations contained in paragraph 40 of Dunlap's Amended Answer and Counterclaim.  Mary Kay further opposes all relief requested in the unnumbered "WHEREFORE" paragraph that follows paragraph 40 of Dunlap's Amended Answer and Counterclaim.

## 2.    ALTERNATIVE CLAIM FOR REFORMED AGREEMENT

41.    Mary Kay re-asserts its responses to the allegations contained in paragraphs 19 to 40 of Dunlap's Amended Answer and Counterclaim as if fully set forth herein.

42.    Mary Kay denies the allegations contained in paragraph 42 of Dunlap's Amended Answer and Counterclaim.  Mary Kay further opposes all relief requested in the unnumbered "WHEREFORE" paragraph that follows paragraph 42 of Dunlap's Amended Answer and Counterclaim.

## II.   <u>AFFIRMATIVE DEFENSES</u>

1.      Dunlap's DTPA counterclaim is barred in whole or in part by the statute of limitations.

2.      Dunlap's DTPA counterclaim is barred in whole or in part by the doctrine of laches.

3.      Dunlap's DTPA counterclaim is barred in whole or in part by the doctrine of waiver.  Dunlap waived her DTPA counterclaim by continuing to purchase Mary Kay products at wholesale after she allegedly discovered (or should have discovered) the alleged "non-existence of a viable retail market for the resale of the goods."  Dunlap also waived her DTPA counterclaim by herself making the same alleged misrepresentations about the existence of a viable retail market for Mary Kay products to potential Independent Beauty Consultants ("IBCs"), IBCs, and others.

4.      Dunlap's DTPA counterclaim is barred in whole or in part by the doctrine of quasi-estoppel.  Dunlap is estopped from bringing her DTPA counterclaim based on her own representations to potential IBCs, IBCs and others that a viable retail market for the resale of Mary Kay products existed.

5.      Dunlap's DTPA counterclaim is barred in whole or in part because the alleged misrepresentation constitutes mere puffing or opinion that is not actionable under the DTPA.

6.      Dunlap's DTPA counterclaim is barred in whole or in part because her own acts or omissions caused or contributed to her alleged injury.

7.      Dunlap's DTPA counterclaim is barred in whole or in part by the doctrine of offset and/or Dunlap's receipt, use, or enjoyment of the goods at issue.

8.      Dunlap's DTPA counterclaim is barred in whole or in part by her failure to mitigate her damages.

9.      Dunlap's DTPA counterclaim for mental anguish, including intense and continuous feelings of humiliation suffered by her, is not recoverable under the DTPA where, as here, the alleged misrepresentation was neither intentionally nor knowingly made.

### III.      REQUEST FOR ATTORNEY FEES

Pursuant to Tex. Bus. & Com. Code § 17.50(c), Mary Kay respectfully asks for its reasonable attorney fees and costs necessary to defend against Dunlap's DTPA counterclaim.

### IV.      PRAYER

WHEREFORE, PREMISES CONSIDERED, Mary Kay prays that upon final judgment (1) all relief requested by Dunlap be denied, (2) all costs be taxed against Dunlap, and (3) for such other and further relief to which it may be justly entitled, whether at law or in equity.

Date: January 3, 2012                    Respectfully submitted,

                                         */s/ Christopher J. Schwegmann*
                                         John T. Cox III
                                         State Bar No. 24003722
                                         Christopher J. Schwegmann
                                         State Bar No.24051315
                                         Gail A. Hayworth
                                         Texas Bar No. 24074382
                                         Lynn Tillotson Pinker & Cox, LLP
                                         2100 Ross Avenue, Suite 2700
                                         Dallas, Texas  75201
                                         (214) 981-3800
                                         (214) 981-3839 – telecopier

                                         **COUNSEL FOR MARY KAY INC.**


                          **CERTIFICATE OF SERVICE**

        The undersigned hereby certifies that a true and correct copy of the above and foregoing
document has been served via the Court's ECF system on counsel of record on the 3rd day of
January, 2013.


                                         */s/ Christopher J. Schwegmann*
                                         Christopher J. Schwegmann